Karra J. Porter, 5223
Karra.Porter@chrisjen.com
John M. Mejía, 13965
John.Mejia@chrisjen.com
Anna P. Christiansen, 17518
Anna.Christiansen@chrisjen.com
CHRISTENSEN & JENSEN, P.C.
257 East 200 South, Suite 1100
Salt Lake City, Utah 84111-2047
Telephone: (801) 323-5000
Facsimile: (801) 355-3472
*Attorneys for Plaintiff Karl Shawn Nicholas*

**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF UTAH, NORTHERN DIVISION**

| | |
|---|---|
| KARL SHAWN NICHOLAS,<br><br>Plaintiff,<br>v.<br><br>ZACHARY C. FRATTO, in his individual capacity; and CLEARFIELD CITY, a municipal corporation;<br><br>Defendants. | **MEMORANDUM IN OPPOSITION TO DEFENDANTS ZACHARY C. FRATTO'S AND CLEARFIELD CITY'S 12(b)(6) MOTION TO DISMISS**<br><br>Case No. 1:25-cv-00078-DAK-JCB<br><br>District Court Judge Dale A. Kimball<br><br>Magistrate Judge Jared C. Bennett |

Plaintiff Karl Shawn Nicholas ("Mr. Nicholas"), hereby submits this memorandum in opposition to Defendants' Motion to Dismiss, ECF No. 18, (the "Motion.")

## INTRODUCTION

In his Complaint, Mr. Nicholas plausibly stated facts supporting his claims that Defendants Zachary C. Fratto ("Officer Fratto") and Clearfield City ("Clearfield") violated his rights under the Fourth and Fourteenth Amendments to be free from unreasonable detention, arrest, and search

and from excessive force. Defendants' Motion does nothing to change this reality. First, the Motion makes an improper attempt to rewrite the Complaint, showing that their arguments cannot withstand a proper analysis using the factual allegations and inferences from the Complaint. Moreover, the Motion's arguments that Officer Fratto is entitled to qualified immunity on any of Mr. Nicholas' claims are unavailing. Finally, Mr. Nicholas states an effective claim against Clearfield. For all these reasons, the Court should DENY the Motion.

**STATEMENT OF RELEVANT FACTS**

The Motion must be decided on the allegations in Plaintiff's Complaint, all of which is incorporated herein by reference. For the Court's convenience, some relevant facts in the Complaint include:

1. Mr. Nicholas is a 44-year-old man with intellectual disabilities and a Special Olympics athlete who enjoys singing karaoke at bars until late at night with his friends. *See* Compl., Intro., ¶ 10; ECF No. 1.

2. On July 25, 2024, at approximately 3:00 a.m., Mr. Nicholas was walking home from the Summit Lounge in Layton, Utah. He was unarmed, walking alone, and had committed no crime. *Id.* ¶¶ 7-12.

3. While cutting through the Legend Hills shopping center, Mr. Nicholas noticed Officer Fratto following him in a police vehicle. *Id.* ¶¶ 14-19. Concerned about prior police harassment on his walks home, Mr. Nicholas quickened his pace to get away. *Id.* ¶¶ 19-20. He continued to walk northward on the public sidewalk. *Id.* ¶ 22.

4. Officer Fratto drove his vehicle to catch up to Mr. Nicolas. *Id.* ¶ 23. Officer Fratto rolled down his passenger-side window and began questioning Shawn. *Id.* ¶ 24.

5. The conversation was as follows:

| | |
|---|---|
| Fratto | Why you running? |
| Nicholas | Cause you're following me. |
| Fratto | Yeah, kinda weird that you're in the parking lot this late at night. |
| Nicholas | I'm not doing anything. Leave me alone. |
| Fratto | Ok. Why you running though? |
| Nicholas | You're following me. And I'm fed up. |

*Id.* ¶ 26.

6. Mr. Nicholas continued to walk home on the public sidewalk, and Officer Fratto continued to follow. *Id.*¶ 27. Mr. Nicholas crossed the street outside of a marked crosswalk, but aside from Officer Fratto's patrol vehicle, there was no traffic in the area. *Id.* ¶¶ 29-32.

7. Officer Fratto sped up to stop in front of Mr. Nicholas, stepped out of his patrol car, and falsely told Mr. Nicholas that Mr. Nicholas was now required to stop because crossing outside of a crosswalk was a crime. Officer Fratto demanded Mr. Nicholas' identification. *Id.* ¶¶ 36-48.

8. Officer Fratto never asked Mr. Nicholas for his name, address, or date of birth. *Id.* ¶ 120. Mr. Nicholas lawfully declined to produce his ID card because he had done nothing wrong. *Id.* ¶ 50. In response, Officer Fratto escalated and threatened to place Mr. Nicholas in handcuffs if he did not comply. *Id.* ¶ ¶ 53-64.

9. Officer Fratto then had the following interaction with Mr. Nicholas:

| | |
|---|---|
| Fratto | You committed a crime. I have a legal right to identify you. So—so either you're going to give me your I.D. or I'm going to put you in handcuffs and then I'm going to find your identification anyway. So what is it gonna be? |
| Nicholas | Crime. I haven't done a crime. |
| Fratto | No? |
| Nicholas | No. |
| Fratto | Kay. Put your hands behind your back then. |

*Id.* ¶ 67.

10. Without giving Mr. Nicholas sufficient time to comply with Officer Fratto's instructions to put his hands behind his back, Officer Fratto lunged toward Mr. Nicholas at the same time. *Id.* ¶ 69. Mr. Nicholas instinctively raised his hands in confusion and in shock. *Id.* ¶¶ 70-73.

11. Officer Fratto performed a leg-sweep takedown maneuver, slamming Mr. Nicholas to the ground. *Id.* ¶¶ 68-82.

12. Officer Fratto "struggled" with Mr. Nicholas for only a "few seconds" *Id.* ¶ 77.

13. Mr. Nicholas suffered a bleeding elbow injury as a result of the takedown and prolonged pain in his left shoulder. *Id.* ¶ 125.

14. Officer Fratto searched, handcuffed, and detained Mr. Nicholas for nearly an hour before released him with a citation for "interfering with a police officer." *Id.* ¶112.

15. Officer Fratto later created several records in which he made deliberately false or materially misleading statements. *Id.* ¶ 114.

16. The Clearfield Police Department later reviewed and ratified Officer Fratto's actions. *Id.* ¶ 116.

17. On or about November 18, 2025, following significant media coverage and public outcry, the Clearfield Police Department released a statement regarding Defendant Fratto's July 25, 2024 encounter with Mr. Nicholas, asserting that based on its "examination of police reports, body-worn camera footage, and in-car camera footage," Defendant Fratto's use of force was "justified." *Id.* ¶¶ 117- 120.

## RESPONSE TO DEFENDANTS "FACTUAL ALLEGATIONS"

At page 2- 7 of the Motion, Defendants improperly assert an entirely new set of "factual allegations" favorable to their arguments but completely at odds with the Complaint. In support of this rewrite of the Complaint, Defendants cite *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002), *Berneike v. CitiMortgage, Inc.*, 708 F.3d 1141, 1146 (10th Cir. 2013) and *Thomas v. Durastanti*, 607 F.3d 655, 659 (10th Cir. 2010). Defendants read far too much into these cases and none support the proposition that a defendant may rewrite factual allegations on a motion to dismiss based on documents referenced in a complaint or video footage of relevant events. *Jacobsen* and *Bernike* involved courts examining written documents literally central to the claims. In *Jacobsen*, it was comparing two books in a copyright claim, *see* 287 F. 3d at 941 and in *Berneike*, it was a letter from a bank whose contents were the basis of the claim, *see* 708 F.3d at 1146. Here, the Complaint makes reference to the misrepresentations in Officer Fratto's report and the contents of Clearfield's statement. Those documents, however, are not central to Mr. Nicholas' claims in the way the books were in *Jacobsen* or the letter was in *Berneike*. To the contrary, the facts and circumstances surrounding the behavior or Officer Fratto and Clearfield's policies and practices are central to Mr. Nicholas' claims. The report and statement are supportive evidence. There is no authority supporting the idea that because the Complaint references documents, Defendants may pick and choose what they view as favorable sections of those documents and pretend that Mr. Nicholas alleged them. The Court should reject this ploy.[1]

---

[1] Underscoring the impropriety of this tactic, Defendants assert the following: "Plaintiff admits that Officer Fratto witnessed Plaintiff "**emerging from the shadows** at the Legend Hills shopping complex" at approximately 3:00 a.m. on July 25, 2024. Ex. D; Ex. E; DKT 1 at ¶¶ 7 & 12 (emphasis on Plaintiff's own description added)." Motion at 12. Mr. Nicholas did not allege at paragraphs 7 or 12 of the Complaint, or anywhere else, that he was "emerging from the

Defendant's reliance on *Thomas* is also misplaced. Setting aside that *Thomas* only applies to summary judgment, *Thomas* instructs courts to credit facts from videos only when those videos contain "clear contrary video evidence" of a party's assertion. 607 F3d at 659. Here, however, Defendants have not pointed out instances of video evidence clearly contradicting any allegation of the Complaint. Indeed, there are no such instances. Instead, Defendants have merely asserted inaccurate and argumentative characterizations or what they say the videos and added new inaccurate and argumentative "factual allegations" based on the videos not made in the Complaint. *Thomas* is not license for movants to assert their own biased and subjective version of facts that happen to be on video, but that is exactly what Defendants have done here.

In sum, Defendants cite no authority allowing them to rewrite the Complaint because it contains reference to video and documents. As such, the Court should completely disregard all of the invented "factual allegations" at pages 2-7 of the Motion. Should the Court decide to consider Defendants' "factual allegations," however, Plaintiff raises the following objections, grouped into four categories to avoid having to file a full blown "answer" to the Defendant's version of the "factual allegations" contained in the Motion.

Improperly Attempts to Add Entirely New Facts or Omit Facts: Numbers 1, 2, 5-11, & 20-22

Improperly Asserts Defendant Fratto's Subjective Views or Reasoning as "Fact": Numbers 1, 2, 7, 10, 15, 16, 22, & 26-31.

Argumentative and/or Speculative: Numbers 7, 8, 9, 12-15, & 18-31.

Legal Conclusions: Numbers 13, 14, 16, 17, 27 & 31.

---

shadows." It is plain misrepresentation to assert that this menacing description taken from Officer Fratto's report was "Plaintiff's own description" of Mr. Nicholas' normal walk home from singing karaoke.

## LEGAL STANDARD

In reviewing a motion to dismiss, the court assumes true all well-pleaded allegations and draws all reasonable inferences in a light most favorable to Mr. Nicholas.[2] In determining the plausibility of a claim, the court "keep[s] in mind that the Rule 12(b)(6) standard does not require a plaintiff to 'set forth a prima facie case for each element.'"[3] Rather, a plaintiff needs only to nudge his claims "across the line from conceivable to plausible."[4] "Granting a motion to dismiss is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice."[5]

## ARGUMENT

### I. Officer Fratto is Not Entitled to Qualified Immunity

Officer Fratto asserts that he is entitled to qualified immunity. A plaintiff disputing qualified immunity does not face a heightened pleading standard.[6] When a defendant raises the defense of qualified immunity, a "plaintiff carries a two-part burden to show: (1) that the defendant's actions violated a federal constitutional or statutory right, and, if so, (2) that the right was clearly established at the time of the defendant's unlawful conduct." [7]

---

[2] *Leverington v. City of Colo. Springs*, 643 F.3d 719, 723 (10th Cir. 2011).
[3] *George v. Urban Settlement Services*, 833 F.3d 1242, 1247 (10th Cir. 2016) (*citing Khalik v. United Air Lines*, 671 F.3d 1188, 1192-93 (10th Cir. 2012)).
[4] *Smith v. U.S.*, 561 F.3d 1090, 1103-04 (10th Cir. 2009) (*citing Bryson v. Gonzales*, 534 F.3d 1182, 1286 (10th Cir. 2008) ("This is not to say that the factual allegations must themselves by plausible; after all, they are assumed to be true. It is just to say that relief must follow from the facts alleged.").
[5] *Dias v. City & Cty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (cleaned up).
[6] *Currier v. Doran,* 242 F.3d 905, 916-17 (10th Cir. 2001).
[7] *T.D. v. Patton*, 868 F.3d 1209, 1220 (10th Cir. 2017) (internal quotation marks omitted).

Mr. Nicholas alleges that Officer Fratto unreasonably detained and arrested him; searched and seized him without probable cause; and used excessive force against him. Compl. ¶ 135. Officer Fratto fails to show that he meets the standard for qualified immunity on any of these claims because Mr. Nicholas alleges clear violations of his rights that were clearly established at the time of Complaint.

### A. Mr. Nicholas Has Established Fourth Amendment Violations Against Officer Fratto

#### 1. Officer Fratto Unreasonably Seized Mr. Nicholas

Defendant Fratto is not entitled to qualified immunity for his unreasonable investigatory stop of Mr. Nichoas. About 57 years ago, *Terry v. Ohio*, 392 U.S. 1 (1968) clearly established that even a brief, investigatory stop must be supported by reasonable suspicion *of a crime* or else it is an unreasonable seizure. With over a year to think about it, Officer Fratto fails to identify any particular crime that he reasonably suspected Mr. Nicholas of committing. Instead, Officer Fratto argues that he "possessed sufficient reasonable suspicion given Plaintiff's belligerent and curt responses to questions, combined with his demeanor and actions of being out at that time of night, along with Plaintiff's flight to evade Officer Fratto, all of which only raised suspicions of *possible nefarious activities* on the part of Plaintiff." Motion at 13 (emphasis added). In other places, Officer Fratto states only that Mr. Nicholas could have been "engaged in *some form of criminal activity*," *id.* at 11 (emphasis added), or that "he may have committed, or was in the process of committing a crime." *id.* at 12. Nowhere, however, does Officer Fratto explain *what* crime he supposedly stopped Mr. Nicholas to investigate. That failure is fatal to Officer Fratto's claim of qualified immunity because it has long been clearly established by *Terry* and its progeny that it violates an

individual's right to be free from unreasonable seizure to stop them against their will without reasonably suspecting them of *a crime*.

None of the cases Officer Fratto cites involved law enforcement being allowed to stop someone based on reasonable suspicion of nebulous, unspecified criminal or "nefarious" activity. All the cases involved an analysis of whether it was reasonable for officers to suspect someone of committing a specific crime. For example, in *United States v. Conner*, 699 F.3d 1225, 1232 (10th Cir. 2012), the police asserted that they stopped defendant because they reasonably suspected the defendant of being "involved in an armed confrontation." To assess the reasonableness of the suspicion of that crime, the Court noted that the late hour could be a factor, but only conjunction with other factors. *Id.* at 1230-32. Likewise in *United States v. Guardado*, the police were in an area specifically to investigate "an ongoing 'tagging' feud (i.e. graffiti feud) between gangs" and stopped the defendant on suspicion of tagging. 699 F.3d 1220, 1221 (10th Cir. 2012). It was in that context that the Court considered the late hour of the stop in conjunction with other factors to consider reasonable suspicion of that crime. *Id.* at 1223-24. And in *United States v. Gates*, 611 F. Supp. 3d 1260, 1267 (D. Utah 2020), aff'd, No. 20-4106, 2021 WL 6060974 (10th Cir. Dec. 20, 2021), the court considered various factors, including a bulge in the defendant's waistband, to assess the reasonableness of seizing someone charged with the specified crime of being a felon in possession of weapon.

Here, because there was no crime that Officer Fratto could or did suspect Mr. Nicholas of committing, the guidance of cases like *Conner* and *Guardado* in considering various facts supporting reasonable suspicion of specified crimes is immaterial. Being out late is not a crime, nor is running away from a police officer, nor is not wanting to talk to police, nor is being sweaty,

nor is swaying, and so on. Courts only look at those factors together in considering whether they support suspicion of a *given* crime, not as being inherently suspicious and supporting an open-ended belief that *some* crime might have happened.

Moreover, contrary to Defendants' suggestion otherwise, *Muehler v. Mena*, 544 U.S. 93, 101 (2005) does not give law enforcement *carte blanche* to seize people to check their ID without any suspicion that they committed crimes. *See* Motion at 10. In fact, the opposite is true. In *Mena* the plaintiff had already been seized during the execution of a search warrant and the Court reasoned that officers asking her to voluntarily show ID was not improper because doing so was not an additional seizure and it did not prolong the valid seizure. *See* 544 U.S. at 100-101. It has been clearly established since 1979, however, that it violates the Fourth Amendment to detain someone for the purpose of showing identification if there is not reasonable suspicion that the person committed a crime. *See Brown v. Texas*, 442 U.S. 47, 53 (1979).

The Court need not go any further in its analysis to completely deny Officer Fratto's request to apply qualified immunity here. Mr. Nicholas has plausibly plead that he was not involved in any criminal activity that night, and Officer Fratto has not specified any crime that he reasonably suspected Mr. Nicholas of committing any crime at all before seizing him. Officer Fratto's arguments that the circumstances supported some general sense that some unspecified criminal activity must have been afoot is nothing more than the kind of "inchoate and unparticularized suspicion or 'hunch'" that *Terry* clearly prohibited as a basis to seize a person decades ago. 392 U.S. at 27.

**2. Officer Fratto Unreasonably Arrested Mr. Nicholas**

Even assuming *arguendo* that the Court was satisfied that Officer Fratto had reasonable suspicion to conduct an investigatory stop of Mr. Nicholas, Officer Fratto is not entitled to qualified immunity for his arrest of Mr. Nicholas.

Before going into the analysis of the arrest, it must be noted that Officer Fratto did in fact arrest Mr. Nicholas. "'[T]he use of firearms, handcuffs, and other forceful techniques' generally exceed the scope of an investigative detention and enter the realm of an arrest."[8] Here, Officer Fratto slammed Mr. Nicholas to the ground, placed him in handcuffs, and kept him in place for a prolonged period of time. Those actions amounted to an arrest requiring probable cause.

Defendant's citation to *Gallegos v. City of Colorado Springs*, 114 F.3d 1024, 1030 (10th Cir. 1997) to argue that Officer Fratto did not arrest Mr. Nicholas is unavailing. In *Gallegos*, the Court held that "[p]olice officers are authorized to take such steps as [are] reasonably necessary to protect their personal safety and to maintain the status quo during the course of [a *Terry* ] stop."[9] The Court further explained that "[f]orceful methods may be used during an investigative detention short of arrest only when such methods are necessary for officer protection.[10] Nothing in the Complaint supports the contention that Officer Fratto thought Mr. Nicholas could be armed or dangerous. Indeed, Officer Fratto admitted that he was only going to put Mr. Nicholas in handcuffs so that he could pull Mr. Nicholas' wallet out of his pocket to see his ID. Compl. ¶ 64. Officer Fratto, in other words, arrested Mr. Nicholas.

---

[8] *Cortez v. McCauley*, 478 F.3d 1108, 1115–16 (10th Cir. 2007) (quoting *United States v. Melendez–Garcia,* 28 F.3d 1046, 1052 (10th Cir.1994)).
[9] *Gallegos v. City of Colorado Springs*, 114 F.3d 1024, 1030 (10th Cir. 1997) (internal quotation marks omitted).
[10] *Manzanares v. Higdon*, 575 F.3d 1135, 1148 (10th Cir. 2009)

“The basic federal constitutional right of freedom from arrest without probable cause is undoubtedly clearly established by federal cases.”[11] The Tenth Circuit has reasoned that “the precise scope of that right uniquely depends on the contours of a state’s substantive criminal law . . . when the Defendants claim to have had probable cause based on a state criminal statute.”[12] “The determination of whether a law enforcement officer's reliance on a statute makes his conduct objectively reasonable and entitles him to qualified immunity turns, *inter alia*, on ‘the degree of specificity with which the statute authorized the conduct in question.’ ”[13] “As a result, ‘an officer’s own subjective reason for the arrest is irrelevant . . . .’”[14]

Defendants argue in their Motion that:

> [P]robable cause existed to arrest [Mr. Nicholas] for (1) his refusal to disclose his identity when asked by Officer Fratto, as required by Utah Code Ann. § 76-8-301.5 (West); (2) interfering with a public servant in violation of Utah Code Ann. § 76-3-301(2)(a)(West) when [Mr. Nicholas] repeatedly attempted to intimidate Officer Fratto by threatening Officer Fratto’s employment; and (3) interfering with a peace officer by resisting arrest or detention as prohibited by Utah Code Ann. § 76-8-305(2)(West).[15]

All of these grounds fail. First, the Complaint alleges that Officer Fratto did not ask Mr. Nicholas his name but only demanded his ID. Compl. ¶ 64. Four years earlier, however, the Tenth Circuit clearly held that Utah Code §76-8-301.5 does not provide Utah law enforcement probable cause to arrest someone who had refused to provide ID, as opposed to refusing to provide their name.[16]

---

[11] *A.M. v. Holmes*, 830 F.3d 1123, 1140 (10th Cir. 2016).
[12] *Id.*
[13] *Id.* at 1141 (citation omitted).
[14] *Quinn v. Young*, 780 F.3d 998, 1006 (10th Cir. 2015) (quotation omitted).
[15] Motion at pg. 15.
[16] *Mglej v. Gardner*, 974 F.3d 1151, 1165 (10th Cir. 2020) (affirming denial of qualified immunity on a wrongful arrest claim because “it is clear that Utah Code § 76-8-301.5 only permits an officer to arrest a suspect for his failure to provide his “name” during such an

As such, it was clearly established that Officer Fratto lacked probable cause to arrest Mr. Nicholas under this exact code section.

Mr. Nicholas believes that Defendants' citation of § 76-3-301(2)(a) as providing probable cause for Mr. Nicholas' arrest is in error, because it refers to criminal fines and does not set out any independent crime. As such, Officer Fratto could not have relied on that statute. It appears however, that Defendants must have meant to rely on some state statute criminalizing threats to a law enforcement officer. Defendants, however, point to no authority in support of the proposition that a law enforcement officer would have probable cause to arrest a random civilian for saying "I will have you fired," because that statement alone is neither a threat nor a credible statement, at least without more context. Even if this argument was colorable, however, the Complaint can reasonably be read to conclude that Mr. Nicholas was not threatening Officer Fratto's employment but was instead merely expressing frustration and saying he intended to report the conduct to Officer Fratto's superiors. If Officer Fratto actually took that statement as a threat, it would be an indication that he knew his course of action was illegal.

Defendants further grasp at Utah Code § 76-8-305(2) to support probable cause, which provides:

> "An actor commits interference with a peace officer if the actor knows, or by the exercise of reasonable care should have known, that a peace officer is seeking to effect a *lawful* arrest or detention of the actor . . .; and interferes with the arrest or detention by . . . refusing to perform an act required by lawful order necessary to effect the arrest or detention and made by a peace officer involved in the arrest or detention . . . ." (emphasis added).

---

investigative stop (provided the other conditions set forth in that statute are met). The Utah statute's language is unmistakably clear").

Here, because Officer Fratto's arrest of Mr. Nicholas was not supported by probable cause, it was not "lawful" under this code provision. Accordingly, the at-best minimal resistance, if any, Mr. Nicholas may have engaged in did not violate this statute and could not provide independent probable cause to arrest him in the first instance.

**3. Officer Fratto's Search of Mr. Nicholas was Unreasonable**

"[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment, subject only to a few specifically established and well-delineated exceptions.[17] "Among the exceptions to the warrant requirement is a search incident to a lawful arrest." [18] However, "because the fact of the lawful arrest establishes the authority to search, where probable cause for the arrest is lacking, the subsequent search is unconstitutional unless supported on other grounds."[19] Moreover, the Tenth Circuit held that police officers "may be held liable if the further unlawful detention and arrest would not have occurred but for their conduct and if there were no unforeseeable intervening acts superseding their liability."[20]

Here, based on the well-pleaded facts of the Complaint, the arrest was not supported by any probable cause or a valid exception to the warrant requirement. Additionally, Defendants have not identified any valid probable cause or exception to the warrant requirement. Because the Complaint alleges facts under which it was clearly established that Officer Fratto violated

[17] *Arizona v. Gant*, 556 U.S. 332, 338 (2009) (quotation omitted).
[18] *Id.*
[19] *United States v. Romero*, 935 F.3d 1124, 1128 (10th Cir. 2019).
[20] *Martinez v. Carson*, 697 F.3d 1252, 1255 (10th Cir. 2012) (citing *Trask v. Franco,* 446 F.3d 1036, 1046-47 (10th Cir. 2006))

Mr. Nicholas' right to be free of a search incident to an unlawful arrest, Officer Fratto is not entitled to qualified immunity on Plaintiff's Fourth Amendment unlawful search claim.[21]

**4. Officer Fratto's Use of Force Against Mr. Nicholas was Excessive**

In *Surat v. Klamser*, 52 F.4th 1261, 1277 (10th Cir. 2022), the Tenth Circuit clearly established that "the use of the takedown maneuver to slam to the ground a nonviolent misdemeanant who poses no immediate threat to the officer or others based on minimal resistance to arrest is unreasonable and constitutes excessive force under the Fourth Amendment." That circumstance is exactly what happened here. Mr. Nicholas had not committed any crime, much less any violent crime, posed no immediate threat to Officer Fratto or others, and put up minimal, if any, resistance to his arrest. Nonetheless, Officer Fratto used a takedown maneuver and slammed him to the ground. Compl. ¶¶ 74-84. Based on the clarity of *Surat* alone, the Court should deny Officer Fratto's request for qualified immunity based on his use of force against Mr. Nicholas.

A deeper analysis of the force confirms this conclusion. Courts consider the three non-exclusive factors to decide if force used was excessive: "(1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether he is actively resisting arrest or attempting to evade arrest by flight."[22] Applying these factors here, the well-plead facts in the Complaint have sufficiently established that Officer Fratto used more force than was objectively reasonable.

---

[21] *See Baptiste v. J.C. Penney Co.*, 147 F.3d 1252, 1256 n.7 (10th Cir. 1998) ("Because this court concludes there was not probable cause to support the warrantless arrest, the pat-down search incident to arrest was also improper").
[22] *Donahue v. Wihongi*, 948 F.3d 1177, 1196 (10th Cir. 2020) (citation omitted).

Under the first *Graham* factor, "a minor offense supports the use of minimal force."[23] If he relied on Section 76-8-301.5 of the Utah Code, Officer Fratto was arresting Mr. Nicholas for a non-violent Class B misdemeanor.[24] This minor non-violent offense weighs against the objective need to use much, if any force.[25]

Under the second *Graham* factor, "an officer may use increased force when a suspect is armed, repeatedly ignores police commands, or makes hostile motions towards the officer or others."[26] An officer, however, may not reasonably see individuals as dangerous simply because they are "argumentative."[27] Here, it is undisputed that Mr. Nicholas was unarmed. He did not make any hostile motions towards Officer Fratto. Officer Fratto did not give Mr. Nichoals reasonable time to follow the instruction to put his hands behind his back after giving him the instruction.[28] Mr. Nicholas never assaulted or intended to assault Officer Fratto. Mr. Nicholas posed no immediate threat to Officer Fratto. All these factors clearly show that Officer Fratto used excessive force against Mr. Nicholas.[29]

Under the third *Graham* factor, courts consider whether someone was "actively resisting arrest or attempting to evade arrest by flight."[30] Mr. Nicholas was not actively resisting, pulling

[23] *Id*. (citation omitted).
[24] *See* Compl. ¶ 67.
[25] *See Donahue* 948 F. 3d at 1189-90, 1197 (holding only minimal force is warranted when arrests under Utah law for misdemeanor offenses of public intoxication and failure to identify oneself).
[26] *Id*. at 1196.
[27] *See Casey v. City of Fed. Heights*, 509 F.3d 1278, 1282 (10th Cir. 2007).
[28] *See* Comp.¶¶ 68-74.
[29] *See Donahue*, 948 F. 3d at 1197 (holding evidence that arrestee was unarmed and made no hostile motions toward officers supported only minimal force).
[30] *Id*. at 1196.

back slightly only in shock and fear.[31] At most, if Mr. Nicholas "struggled," it was only after Officer Fratto had already slammed him down on the ground, and only for a "few seconds."[32]

Because all three *Graham* factors indicate that only minimal force was objectively reasonable in arresting Mr. Nichoals, he has sufficiently established that Officer Fratto used more force than was objectively reasonable. "If the plaintiff can prove that the officers used greater force than would have been reasonably necessary to effect a lawful arrest, he is entitled to damages resulting from that excessive force."[33]

Defendants' reliance on the unpublished case of *Huntley v. City of Owasso*, 497 F. App'x 826, 832 (10th Cir. 2012) to argue that a leg sweep is not excessive is unavailing for at least two reasons. First the case is unpublished. Second, ten years after *Huntley*, in *Surat*, a published opinion, the Tenth Circuit clearly established that officers use excessive force when they use a takedown maneuver on a minimally resisting, non- violent individual who poses no threat to the officer. 52 F.4th at 1277. The Complaint alleges facts supporting the conclusion that Mr. Nicholas was the kind of person against whom that use of force was clearly established as a violation as of 2022, years before Officer Fratto used it on him.

Viewing the allegations in the light most favorable to Mr. Nicholas, the lasting physical injury he suffered on his left arm and shoulder, and the prolonged pain inflicted on him are sufficient for him to meet his burden of establishing an actual injury to support an excessive force claim.[34] The Court should ignore Defendants' attempt to minimize Mr. Nicholas' injury by calling

---

[31] See Compl. ¶¶ 68-74.
[32] *See* Compl. ¶ 77.
[33] *Fisher v. City of Las Cruces,* 584 F.3d 888, 893–94 (10th Cir. 2009) (quoting *Cortez v. McCauley,* 478 F.3d 1108, 1127 (10th Cir. 2007)).
[34] *See* Compl ¶ 125; *see also Cortez*, 478 F. 3d at 1129.

it nothing more than "road rash" because the Complaint supports a conclusion that the injuries were far more severe than that. Moreover, Defendants are not entitled to inferences in their favor.

## III. PLAINTIFF HAS PLAUSIBLY PLED A CLAIM FOR RELIEF AGAINST CLEARFIELD CITY

"A plaintiff suing a municipality under § 1983 for the actions of one of its officers must prove: (1) that a municipal employee committed a constitutional violation; and (2) that a municipal policy or custom was the moving force behind the constitutional deprivation."[35] A municipal policy or custom may take the form of

> (1) "a formal regulation or policy statement"; (2) an informal custom "amoun[ting] to 'a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law' "; (3) "the decisions of employees with final policymaking authority"; (4) "the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval"; or (5) the "failure to adequately train or supervise employees, so long as that failure results from 'deliberate indifference' to the injuries that may be caused."[36]

Defendants' arguments against municipal liability all fail. First, as discussed above, Officer Fratto violated Mr. Nicholas' rights and the Complaint supports a conclusion that Clearfield's failure to train him properly led to that violation. This assertion is not mere "say so." Rather, it is based on the fact that Clearfield had gotten specific guidance from the Tenth Circuit on the proper use of force in *Surat* in 2022 yet in 2024, not only did a Clearfield officer disobey that guidance, Clearfield ratified his specific behavior in public. That this ratification happened after public outcry and after footage of the incident was widely in circulation that showed the specific behavior

---

[35] *Jiron v. City of Lakewood*, 392 F.3d 410, 419 (10th Cir. 2004) (citation omitted).
[36] *Bryson v. City of Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010) (citation omitted).

further enforced Clearfield's ownership of its position and ignorance of and/or unwillingness to heed *Surat*.

This ratification, along with Clearfield's failure to discipline Officer Fratto or revise its policies, supervision, or trainings showed that Clearfield did not understand or perhaps had not received the Tenth Circuit's mandate on the use of force.

Clearfield's attempt to blame POST is unavailing. POST may provide initial and continuing trainings to Utah's police officers, but their employers are the ones responsible for what those officers do when representing them. Clearfield has not demonstrated that it was reasonable for it to rely on POST to keep their officers updated on cases like *Surat*, if Clearfield did indeed do so.

Moreover, the Complaint supports a conclusion that Clearfield was deliberately indifferent to the need for training. This conclusion is supported by the fact that once Clearfield was alerted to Officer Fratto's actions, rather than do anything to prevent their officers from repeating that behavior, Clearfield publicly asserted that Officer Fratto was justified. This failure to acknowledge wrongdoing after the fact, and in fact, say the wrongdoing was right, is highly suggestive of a lack of care or diligence before the fact.

All these facts support a conclusion that Clearfield did not properly train any of their officers, including Officer Fratto, that it was wrong to use a dangerous takedown move on a non-violent misdemeanant who was minimally resisting and posing no threat to officer safety. This failure to train was a moving cause behind the violations of Mr. Nicholas' rights and caused him damages.

## CONCLUSION

For the reasons stated above, Plaintiff respectfully requests that the Court deny Defendants' motion to dismiss his Complaint.

DATED September 26, 2025.

CHRISTENSEN & JENSEN, P.C.

*/s/ John M. Mejía*
Karra J. Porter
John M. Mejía
Anna P. Christiansen
*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 26th day of September, 2025, I caused a true and correct copy of the foregoing **MEMORANDUM IN OPPOSITION TO DEFENDANTS ZACHARY C. FRATTO'S AND CLEARFIELD CITY'S 12(b)(6) MOTION TO DISMISS** to be filed with the clerk of the court using the efiling system, which sent notification of such filing to the following:

William S. Helfand
Emily L. Rutter
LEWIS BRISBOIS BISGAARD & SMITH LLP
6650 South Millcreek Drive, Suite 200
Salt Lake City, Utah 84121-2319
T: (801) 562-5555
Bill.helfand@lewisbrisbois.com
Emily.rutter@lewisbrisbois.com
*Attorney for Defendants*

*/s/ John M. Mejia*