IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| KARL SHAWN NICHOLAS<br><br>Plaintiff,<br><br>vs.<br><br>ZACHARY C. FRATTO, in his individual capacity; and CLEARFIELD CITY, a municipal corporation<br><br>Defendants. | MEMORANDUM DECISION AND ORDER<br><br>Case No. 1:25-CV-00078-DAK-JCB<br><br>Judge Dale A. Kimball<br><br>Magistrate Judge Jared C. Bennett |

This matter is before the court on Defendants Zachary C. Fratto's and Clearfield City's Motion to Dismiss [ECF No. 18]. On February 5, 2026, the court held a hearing on the motion. At the hearing, Plaintiff was represented by Anna Pitcher Christiansen and John M. Mejia, and Defendant was represented by William S. Helfand and Emily L. Rutter. The court took the motion under advisement. After carefully considering the memoranda filed by the parties and the law and facts pertaining to the motion, the court issues the following Memorandum Decision and Order.

## BACKGROUND

On July 25, 2024, at approximately 3:00 a.m., Plaintiff Karl Nicholas, a mentally handicapped adult male, was walking home alone from Summit Lounge in Layton, Utah. Defendant Officer Zachary Fratto of the Clearfield police department, noticed Nicholas walking through the Legend Hills shopping center and began to follow Nicholas to investigate. Officer Fratto's body and patrol car cameras recorded the interaction. Officer Fratto pulled alongside Nicholas and Nicholas continued to walk. Officer Fratto got out of his patrol car and began to

approach Nicholas on foot at which time Nicholas began to run.

Officer Fratto returned to his patrol car and pulled up next to Nicholas, who was no longer running. Officer Fratto questioned Nicholas about why he had been running. Officer Fratto commented that it was strange Nicholas was in the parking lot at such an early morning hour. Nicholas stated he was running because "you're following me. And I'm fed up." Nicholas continued to walk on the public sidewalk. Nicholas crossed the road behind Fratto's patrol car and outside of a designated crosswalk.

Officer Fratto turned his patrol car around and followed Nicholas into an apartment complex parking lot. Officer Fratto exited his patrol car and instructed Nicholas to stop, believing Nicholas had jaywalked. Nicholas stopped. Officer Fratto asked Nicholas for his identification multiple times (twelve times within four minutes) which Nicholas refused to produce and continued to insist he had done nothing wrong. Nicholas informed Officer Fratto that he was walking home from a bar and then threatened to have Officer Fratto fired for harassing him. After approximately four minutes into the encounter, Officer Fratto called for back-up. Officer Fratto told Nicholas that Nicholas had committed a crime (mistakenly believing Nicholas had jaywalked), and Officer Fratto had a legal right to identify him. He told Nicholas that unless he produced his identification, he would handcuff him and search him for his identification. Nicholas again insisted he had not committed a crime. Officer Fratto instructed Nicholas to put his hands behind his back.

Almost simultaneous to the order to place his hands behind his back, Officer Fratto moved toward Nicholas to restrain him. In response, Nicholas raised his hands in front of himself. Officer Fratto grabbed Nicholas's arm and performed a leg sweep takedown maneuver bringing them both to the ground. After a brief struggle, Officer Fratto handcuffed Nicholas.

During the takedown maneuver, Nicholas sustained a bleeding elbow injury and suffers from prolonged pain in his left shoulder. Officer Fratto searched Nicholas's pockets and removed his wallet, a set of key and some cash money. At this time, two more Clearfield police officers arrived.

Officer Fratto placed Nicholas in the back of his patrol car and recounted the events to the two other officers. At the end of the recitation of the incident, Officer Fratto said, "I figured that his mannerisms were pretty weird. But I did see that he was pretty sweaty, so. I don't know if he's necessarily like on drugs or I guess he's just handicapped." Compl. ¶ 104. One of the other officers finished Officer Fratto's sentence by saying "handicapped" at about the same time Officer Fratto did. The second officer made the "handicapped" comment less than two minutes after observing Nicholas. Officer Fratto then released Nicholas with a citation for interfering with a police officer.

The Clearfield police department conducted a review of the incident and concluded that Officer Fratto's use of force was justified. Nicholas filed suit against Officer Fratto in his individual capacity and Clearfield City for violation of his rights under the Fourth and Fourteenth Amendments and 42 U.S.C § 1983. Nicholas asserts that Officer Fratto violated his constitutional rights and those secured by statute, by unreasonable detention and arrest, search and seizure without probable cause and the use of excessive force. Nicholas alleges that Clearfield City violated these same rights by demonstrating deliberate indifference towards Nicholas's rights and by its failure to revise policies, supervise or train officers against the use of the leg sweep takedown technique that injured Nicholas. Defendants brought this Motion to Dismiss.

## STANDARD OF REVIEW

"The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991). "When there are well-pleaded factual allegations [as opposed to legal conclusions], a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Allegations must "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007). The court is "not bound by conclusory allegations, unwarranted inferences or legal conclusions*." Hackford v. Babbit,* 14 F.3d 1457, 1465 (10th Cir. 1994).

## DISCUSSION

**OFFICER FRATTO**

Officer Fratto asserts he is entitled to qualified immunity and is therefore protected from § 1983 liability. "Qualified Immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S.731, 735 (2011). Qualified immunity is an affirmative defense that "creates a presumption that [the defendant is] immune from suit." *Pera v. Baca*, 817 F.3d 1198, 1202 (10th Cir. 2016). The burden of proof lies with the plaintiff in establishing both prongs of the standard. *Estate of Beauford v. Mesa County, Colorado*, 35 F.4th 1248, 1261 (10th Cir.

2022). "If the plaintiff fails to establish either prong of the two-pronged qualified-immunity standard, the defendant prevails on the defense." *Blackmore v. Carlson,* 574 F.Supp.3d 1012, 1036 (D. Utah 2021).

I. *Constitutional violation*

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures." U.S. Const. amend. IV. A person is seized only "when the officer, by means of physical force or show of authority, terminates or restrains his freedom of movement." *Brendlin v. California*, 551 U.S. 249, 254 (2007). However, police officers "can stop and briefly detain a person for investigative purposes if the officer has reasonable suspicion … that criminal activity 'may be afoot,' even if they lack probable cause under the Fourth Amendment." *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (quoting *Terry v. Ohio*, 392 U.S. 1, 20 (1968)). Reasonable suspicion is "based on the totality of the circumstances, taking into account an officer's reasonable inferences based on training, experience and common sense." *United States v. Garcia,* 751 F.3d 1139, 1143 (10th Cir. 2014) (quoting *United States v. Rice,* 483 F.3d 1079, 1083 (10th Cir. 2007)). "Reasonable suspicion is not, and is not meant to be, an onerous standard." *United States v. Simpson*, 609 F.3d 1140, 1153 (10th Cir. 2010).

In assessing whether reasonable suspicion exists the court must "judge the officer's conduct in light of common sense and ordinary human experience," and consider the officer's actions using an "objective standard.*" United States v. McHugh*, 639 F.3d 1250, 1256 (10th Cir. 2011). The court asks, "whether the facts available to the detaining officer, at the time, warranted an officer of reasonable caution in believing the action taken was appropriate." *Id.* at 1255. A court also considers "whether the officer's action was justified at its inception" and "whether it was

reasonably related in scope to the circumstances which justified the interference in the first place." *Terry*, 392 U.S. at 20. Further, law enforcement may "draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." *United States v. Arvizu*, 534 U.S. 266, 273 (2002). In some instances, "reasonable suspicion may exist even where 'it is more likely than not that the individual is *not* involved in any illegality.'" *United States v. Gates*, 611 F.Supp.3d 1260, 1270 (D. Utah 2020) (quoting *United States v. Johnson*, 364 F.3d 1185, 1194 (10th Cir. 2004)).

Officer Fratto acknowledges that when he exited his patrol car and instructed Nicholas to stop, an investigative detention occurred. Such detention required Officer Fratto to possess reasonable suspicion that Nicholas was engaged in criminal activity. Officer Fratto argues his reasonable suspicion was based on several factors including: the early morning hour, his observation of Nicholas walking through a shopping center parking lot when the surrounding businesses were closed, Nicholas's decision to run when he saw Officer Fratto exit his patrol car and Nicholas's belligerent and curt responses to Officer Fratto's questions prior to the stop.[1] Considering Officer Fratto's experience and the totality of the circumstances, the court finds reasonable suspicion based on articulable facts exited that justified the initial stop and detention of Nicholas.

*Was Nicholas arrested?*

At least "[n]ine courts of appeals, including the Tenth Circuit, have determined that [ ]

---

[1] Officer Fratto asserts in his description of the events leading up to Nicholas's detention that the shopping center had been the site of prior criminal activity. However, he does not argue that this is one of the factors he relied on to establish his justification to stop Nicholas, nor does he supply any evidence that the shopping center was a high crime area. Consequently, the court does not include this fact in its analysis of the reasonableness of Officer Fratto's detention of Nicholas.

intrusive precautionary measures do not necessarily turn a lawful *Terry* stop into an arrest under the Fourth Amendment." *United States v. Perdue,* 8 F.3d 1455, 1463 (10th Cir. 1993) (citations omitted). Police officers are "authorized to take such steps as [are] reasonably necessary to protect their personal safety and to maintain the status quo during the course of [an investigative] stop." *Id.* at 1462 (quoting *United States v. Hensley*, 469 U.S. 221, 235 (1985)). "The hallmark of the Fourth Amendment is reasonableness. As long as the precautionary measures employed by officers during a Terry stop are reasonable, they will be permitted without a showing of probable cause." *Gallegos v. City of Colorado Springs*, 114 F.3d 1024, 1030 (10th Cir. 1997). In determining the reasonableness of the precautionary measures "the standard is objective – 'would the facts available to the officer at the moment of the seizures…warrant a man of reasonable caution in the belief that the action taken was appropriate.'" *Id*. at 1030-31 (quoting *United States v. McRae*, 81 F.3d 1528, 1536 (10th Cir. 1996)) (citations omitted). "Forceful methods may be used during an investigative detention short of arrest only when such methods are necessary for officer protection." *Manzanares v. Higdon*, 575 F.3d 1135, 1148 (10th Cir. 2009). "The use of firearms, handcuffs, and other forceful techniques generally exceed the scope of an investigative detention and enter the realm of an arrest." *Cortez v. McCauley*, 478 F.3d 1108, 1115-16 (10th Cir. 2007) (quoting *United States v. Melendez-Garcia*, 28 F.3d 1046, 1052 (10th Cir. 1994)).

Officer Fratto argues that he acted reasonably when he handcuffed Nicholas. He contends that he only handcuffed him to maintain the status quo. The record does not support that assertion. To the contrary, handcuffing Nicholas was the very event that altered the status quo. Up to that point there had been little change in the interaction between Officer Fratto and Nicholas. Although Nicholas was argumentative, he was not aggressive or even yelling. His

conduct consisted primarily of refusing Officer Fratto's repeated requests for identification. Nicholas did threaten to have Officer Fratto fired but it would be unreasonable for Officer Fratto to treat that statement as a genuine threat of harm or obstruction. Law enforcement officers routinely encounter such expressions of frustration from members of the public, and nothing in the record suggests that Nicholas had the ability-or the intent-to carry out such a threat.

Officer Fratto notes that Nicholas stated he had been at a bar, and he had observed Nicholas staggering. He argues that he did not know with whom he was dealing and had no way of knowing what substances Nicholas may have consumed. Of course, this is true of many police encounters with members of the public. None of these facts alone or collectively, would lead a reasonable officer to conclude that he needed to handcuff a suspect to maintain the status quo during an investigative stop. Moreover, Officer Fratto never alleges he handcuffed Nicholas because he felt unsafe. In fact, by his own admission he handcuffed Nicholas in order to search him for his identification *not* to maintain the status quo or for his safety. Accordingly, the court concludes that when Officer Fratto handcuffed Nicholas the detention was transformed into an arrest that required probable cause to be constitutionally valid.

   *Was there probable cause to arrest Nicholas?*

"A warrantless arrest violates the Fourth Amendment unless it was supported by probable cause" that a crime has or is being committed. *Keylon v. City of Albuquerque*, 535 F.3d 1210, 1216 (10th Cir. 2008). "When assessing whether an officer had probable cause to arrest an individual, courts "examine the events leading up to the arrest, and then decide 'whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause.'" *Maryland v. Pringle,* 540 U.S. 336, 371 (2003) (quoting *Ornelas v. United States,* 517 U.S. 690, 696 (1996)). The Supreme Court has held that "[i]f an officer has probable

cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001). Therefore, "an arrest is lawful as long as probable cause exists for *some* offense." *Morris v. Noe,* 672 F.3d 1185, 1193 (10th Cir. 2012). Officer Fratto claims that probable cause existed to arrest Nicholas for violating two[2] Utah statues: (1) refusal to disclose identity (Utah Code § 76-8-301.5) and interference with a peace officer by resisting detention (Utah Code § 76-8-305(2)).

Utah Code § 76-8-301.5 states in relevant part, "[a]n actor commits failure to disclose identity if, during the period of time that the actor is lawfully subjected to a stop…a peace officer demands that the actor disclose the actor's name and date of birth" and "the actor fails to disclose the actor's name and date of birth." While the Supreme Court has held that probable cause exists to arrest a person stopped for investigative purposes who does not produce identification that is only true when there is a state law mandating such. *See Hibel v. Sixth Judicial Dist. Court of Nevada, Humbolt County,* 542 U.S. 177, 188 (2004). The Tenth Circuit has held that requesting identification is not the same as asking for a name stating, "it is clear Utah Code § 76-8-301.5 only permits an officer to arrest a suspect for his failure to provide his "name" during such an investigative stop (provided that the other conditions set forth in that statue are met). The Utah

---

[2] Officer Fratto also alleges that Nicholas violated Utah Code § 76-3-301(2)(a). This likely is an error. That section of the Utah Code does not relate to threats against a law enforcement officer as Officer Fratto asserts but to the imposition of criminal fines. Further, Officer Fratto offers no argument as to how Nicholas violated this statute and left Nicholas to guess he was referring to the threats Nicholas made to have Officer Fratto fired. Officer Fratto provides no authority to support his argument that Nicholas violated this imagined statute. Consequently, it is not considered here. Moreover, Officer Fratto's passing assertion that his mistaken belief that Nicholas violated a jaywalking statute was sufficient to provide probable cause for arrest is not considered here. The court acknowledges that "even law enforcement officials who 'reasonably but mistakenly conclude that probable cause is present' are entitled to immunity." *A.M v. Holmes,* 830 F.3d 1123, 1130 (10th Cir. 2016) (citations omitted) However, the question still turns on reasonableness. Here, Officer Fratto does not identify the statute he thought was violated nor does he offer any analysis or facts explaining why his belief Nicholas violated the jaywalking statute was mistaken but still reasonable.

statute's language is unmistakably clear." *Mglej v. Gardner*, 974 F.3d 1151, 1165 (10th Cir. 2020). Here, Officer Fratto never requested Nicholas's name, only his identification, exactly as the officer in *Mglej* did. Nicholas's refusal to provide identification did not violate the statute. Therefore, Officer Fratto lacked probable cause to arrest Nicholas for its alleged violation.

Turning to Utah Code § 76-8-305(2), that statute provides:

> "An actor commits interference with a peace officer if the actor knows, or by the exercise of reasonable care should have known, that a peace officer is seeking to effect a lawful arrest or detention of the actor . . .; and interferes with the arrest or detention by. . . refusing to perform an act required by lawful order necessary to effect the arrest or detention and made by a peace officer involved in the arrest or detention . . . ."

Officer Fratto contends that Nicholas resisted arrest and therefore probable cause existed to arrest him. This logic is circular at best. Officer Fratto had no probable cause to arrest Nicholas when he handcuffed him. Officer Fratto cannot manufacture probable cause by initiating an unlawful arrest and then rely on Nicholas's alleged resistance in order to justify that arrest after the fact. Further, the Utah statute itself requires the arrest to be lawful, which it was not. Accordingly, the court concludes that Officer Fratto violated Nicholas's Fourth Amendment rights when he arrested and then searched him without probable cause.

*Was the force used by Officer Fratto excessive?*

Whether the use of force is reasonable is decided by "whether the totality of the circumstances justified the use of force" and by pay[ing] careful attention to the facts and circumstances of a particular case." *Est. of Larsen ex rel. Sturdivan v. Murr*, 511 F.3d 1255, 1259-60 (10th Cir. 2008). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments-in circumstances that are tense, uncertain and rapidly evolving–about the amount of force that is necessary in a particular situation." *Graham v. Connor*, 490 U.S. 386, 396-97 (1989). Relevant factors a court considers

include "[1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396-97.

Nicholas alleges that the use of the leg sweep takedown maneuver was excessive force under the circumstances and Fratto's use of it violated his Fourth Amendment right. In determining whether force is excessive, the court examines each of the factors in *Graham*. The first *Graham* factor– "the severity of the crime at issue" –favors Nicholas. *Id.* Neither failure to provide identity or interference with a peace officer are severe crimes[3]. *Id.* at 396. In fact, both offenses are class B misdemeanors. "Because these are misdemeanor offenses and [it is reasonable to conclude] they were committed in a nonviolent manner, 'the amount of force used should [be] reduced accordingly.'" *Surat v. Klamser*, 52 F.4th 1261, 1274 (10th Cir. 2022) (quoting *Fogarty v. Gallegos*, 523 F.3d 1147, 1160 (10th Cir. 2008)).

In evaluating the second *Graham* factor the court "must look at whether the officers or others were in danger at the precise moment that they used force." *Emmett v. Armstrong,* 973 F.3d 1127, 1136 (10th Cir. 2020). "Under the second [Graham] factor, an officer may use increased force when a suspect is armed, repeatedly ignored police commands, or makes hostile motions towards the officer or others." *Donahue v. Wilhongi*, 948 F.3d 1177, 1196 (10th Cir. 2020).

Officer Fratto never asserts that Nicholas was an immediate threat to his safety or the safety of others. Instead, he relies on the fact that Nicholas did not comply with multiple requests to produce his identification. Although Nicholas did ignore Officer Fratto's repeated requests for

---

[3] Although not examined here for reasons discussed *supra*, the court notes that jaywalking is similarly not a serious crime.

identification-which he was not legally required to produce-Nicholas was unarmed and made no hostile movements towards Officer Fratto. Furthermore, after a review of the video evidence, it should have been clear to a reasonable officer at that point in the detention, if not before, that Nicholas was mentally handicapped and was having difficulty understanding Officer Fratto's explanation for the stop. In fact, Officer Fratto appeared to suspect that Nicholas had a disability, as evidenced by the comments he made while recounting the incident to the officers who responded to his request for backup. One of the responding officers also appeared to recognize this possibility after only a brief interaction with Nicholas. While Nicholas could be described as argumentative, he was not aggressive. Appearing "slightly upset" or "argumentative" is not the same as being dangerous and it would have been unreasonable for Officer Fratto to view Nicholas as an immediate threat to himself or others. *Casey v. City of Federal Heights*, 509 F.3d 1278, 1282 (10th Cir. 2007). Therefore, the second *Graham* factor also weighs in favor of Nicholas.

As to the third *Graham* factor, the court evaluates whether Nicholas "attempted[ed] to flee or actively resist[ed] the arrest." *Surat*, 52 F.4th at 1275 (quoting *Harte v. Bd of Comm'rs of Cnty of Johnson, Kan.*, 864 F.3d 1154, 1191 (10th Cir. 2017)). Further, the use of force must be "reasonable and proportionate given [Nicholas's] resistance." *Perea v. Baca*, 817 F.3d 1198, 1203 (10th Cir. 2016).

After questioning Nicholas and asking for his identification the following occurred:

Fratto: You committed a crime. I have a legal right to identify you. So so either you're going to give me your ID or I'm going to put you in handcuffs and then I'm going to find your identification anyway. So what is it gonna be?

Nicholas: Crime? I haven't done a crime.

Fratto: No?

    Nicholas: No.

    Fratto: K. Put your hands behind your back then.

Compl. ¶ 67.

Almost immediately after instructing Nicholas to put his hands behind his back and without giving Nicholas time to comply, Officer Fratto moved toward Nicholas. Nicholas raised both his hands palms up at chest level. Officer Fratto pulled Nicholas's right arm down and behind Nicholas's back. Nicholas pulled his other arm away. Officer Fratto then placed his leg next to Nicholas's leg and performed a leg sweep take down maneuver. The two men ended up on the ground, Officer Fratto on top of Nicholas, where they struggled for less than one minute. Officer Fratto then handcuffed Nicholas. The entire encounter, from the time Officer Fratto first observed Nicholas walking to the takedown, lasted approximately ten minutes.

    The only resistance Nicholas offered prior to the leg sweep was to put his arms up in a defensive posture and then attempt to pull his free arm away from Officer Fratto. While this qualifies as some resistance it was minor and as such required a minor response by Officer Fratto. Instead, Officer Fratto initiated a takedown maneuver on a person much smaller than he was who he did not suspect to be armed or dangerous. The court finds that the third *Graham* factor weighs in favor of Nicholas.

    Nicholas's minimal resistance, coupled with the minor nature of the offenses at issue and the absence of any reasonable concern of officer or public safety, weighs heavily against the use of significant force. Under these circumstances, the court concludes that Officer Fratto's use of force was excessive and violated Nicholas's Fourth Amendment rights.

    II. *Clearly Established Right*

    To overcome the presumption of qualified immunity, Nicholas must show that not only

was there a violation of his constitutional rights but "that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft,* 563 U.S. at 735. When determining whether the right was clearly established, courts focus on whether the officer had "fair notice that [his] conduct was unlawful." *Kisela v. Hughes*, 584 U.S. 100, 104 (2018). Fair notice exists when the officer's conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* "Use of excessive force is an area of the law in which the results depend very much on the facts of each case and thus police officers are entitled to qualified immunity unless existing precedent 'squarely governs' the specific facts at issue." *Id.* Clearly established law "does not require a case directly on point" but that the "existing precedent must have placed the statutory or constitutional question beyond debate." *Id.*

"The Supreme Court [has] 'repeatedly told courts not to define clearly established law at a high level of generality'" but has also directed that "'officials can still be on notice that their conduct violates established law even in novel factual circumstances.'" *Quinn v. Young*, 780 F.3d 998, 1005 (10th Cir. 2015) (quoting *al-Kidd*, 563 U.S. at 742) (citations omitted). "A plaintiff may satisfy this standard by identifying an on-point Supreme Court or published Tenth Circuit decision; alternatively, the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Id*. "There can [also] be the rare obvious case where the unlawfulness of the officer's conduct is sufficiently clear even though existing precedent does not address similar circumstances." *Est. of Ceballos v. Husk*, 919 F.3d 1204, 1218 (10th Cir. 2019) (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 64 (2018)).

Nicholas relies exclusively on the Tenth Circuit's decision in *Surat* to provide a reasonable officer with notice that a leg sweep takedown maneuver against a nonviolent suspected misdemeanant who posed no immediate threat to the officer or the public was the use

14

of excessive force. The court agrees. While there are differences between the instant case and *Surat* this case squarely governs the specific facts at issue here.

In *Suart*, two police officers were dispatched to a bar in response to a reported disturbance involving the plaintiff and her boyfriend. *Surat*, 52 F.4th 1267. The officers there had reason to detain or arrest the plaintiff for a relatively minor and nonviolent offense. *Id.* There was no indication that the plaintiff posed a serious threat to the officers or the public. *Id.* One of the officers attempted to arrest the plaintiff by grabbing her wrist. *Id.* The plaintiff responded by attempting to pry the officer's fingers off her arm and "pawed" at the officer's arm. *Id.* After this minimal resistance and despite a significant size advantage over the plaintiff, the officer initiated a leg sweep takedown maneuver which resulted in the plaintiff receiving a concussion, cervical spine strain, contusions to her face and bruising. *Id.* The Tenth Circuit in *Surat* found, as the court does here, that all three *Graham* factors weighed in the plaintiff's favor. Specifically, the *Surat* court held that "the use of the takedown maneuver to slam to the ground a nonviolent misdemeanant who poses no immediate threat to the officer or others based on minimal resistance to arrest is unreasonable and constitutes excessive force under the Fourth Amendment." *Id*. at 1276.

*Surat* is a Tenth Circuit case published November 9, 2022. The incident at issue here occurred July 25, 2024, almost two years after *Surat* was decided. While the plaintiff in *Surat* suffered more serious injuries than Nicholas has alleged, the force used by the officer, a leg sweep, was identical. Furthermore, the circumstances under which the force was used are such that a reasonable officer was on notice that the use of a leg sweep was unreasonable under the circumstances.

Officer Fratto argues that the Tenth Circuit decisions in *Gallegos* and *Huntley* would lead

a reasonable officer to believe that a leg sweep was not excessive force under the present circumstances. There are several reasons this is not persuasive. In *Gallegos*, officers were responding to a report of a prowler in a neighborhood when they observed the plaintiff walking unsteadily, talking to himself and crying. *Gallegos,* 114 F.3d at 1026. When officers questioned the plaintiff, he ignored them and pulled away when one of the officers attempted to grab him. *Id.* After the officer again attempted to grab the plaintiff's shoulder he jerked away, clenched his fists and crouched in a "wrestler's position." *Id.* At that point the officer performed a leg sweep taking the plaintiff to the ground. *Id.* Although the court in *Gallegos* did not conduct a *Graham* analysis, it seems certain that at least two factors-an immediate threat to the officer and resistance to detention or arrest-would favor the officers in performing the takedown maneuver. As previously discussed, this is not the case here.

In *Huntley*, officers were responding to a report of domestic abuse, which under applicable law could be classified as either a misdemeanor or felony. *Huntley v. City of Owasso*, 497 Fed.App'x 826, 831 (10th Cir. 2012). The officers knew from the 911 call that the victim had reported there were "lots of weapons" in the house. *Id.* The officers approached the house, knowing the victim was inside with the suspect and were concerned it could escalate into a hostage situation. *Id.* When the suspect came to the door the officer quickly performed an arm bar and leg sweep on the suspect, who they feared to be armed and dangerous. The Tenth Circuit found that all three *Graham* factors weighed in favor of the officers. This is distinguishable from the present case where all three *Graham* factors weigh against the officer and none of the exigent circumstances present in *Huntley* are present here. Moreover, *Huntley* is an unpublished decision and therefore lacks precedential weight, particularly when compared to a more recent and directly applicable published Tenth Circuit case.

16

For the reasons discussed, the court finds that a constitutional violation occurred when Officer Fratto lacked probable cause to both seize and then search Nicholas and also when he used excessive force to effectuate the unlawful arrest. Moreover, the law was clearly established at the time of the incident by the Tenth Circuit holding in *Surat*. A reasonable officer should have known on July 25, 2024, that the use of a leg sweep takedown maneuver was excessive under the circumstances present during Officer Fratto's encounter with Nicholas. Accordingly, Officer Fratto is not entitled to qualified immunity as a defense.

**CLEARFIELD CITY**

"Municipalities can be held liable under 42 U.S.C. § 1983 only for their own unlawful acts." *Pyle v. Woods*, 874 F.3d 1257, 1266 (10th Cir. 2017) (citing *Connick v. Thompson*, 563 U.S. 51, 60 (2011)). "A municipality may not be held liable under § 1983 solely because its employees inflicted injury on the plaintiff." *Hinton v. City of Elwood, Kan.,* 997 F.2d 774, 782 (10th Cir. 1993). "To establish municipal liability, a plaintiff must show: (1) an officer committed an underlying constitutional violation, (2) "the existence of a municipal policy or custom and [3] a direct causal link between the policy or custom and the alleged injury." *City of Canton, Ohio v, Harris,* 489 U.S. 378, 385 (1989). A municipal policy or custom may take the form of:

> (1) "a formal regulation or policy statement"; (2) an informal custom "amount[ing] to 'a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law'"; (3) "the decisions of employees with the final policymaking authority"; (4) "the ratification by such final policymakers of the decisions-and the basis for them-of subordinates to whom authority was delegated subject to these policymakers' review and approval"; or (5) the "failure to adequately train or supervise employees, so long as that failure results from 'deliberate indifference' to the injuries that may be caused."

*Bryson v. City of Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010). "When the asserted policy is a failure to act, the plaintiff must demonstrate that the municipality's inaction was the result of

'deliberate indifference' to the rights of its inhabitants." *Hinton*, 997 F.2d at 782 (quoting *City of Canton*, 489 U.S. at 389).

As discussed *supra*, Officer Fratto violated Nicholas's Fourth Amendment rights. Therefore, the next inquiry is whether Nicholas has sufficiently pleaded facts to demonstrate that Clearfield had a policy or custom that caused his injury. Nicholas contends that his injuries resulted from Clearfield's failure to train Officer Fratto on the holding in *Surat*. In support of this claim Nicholas points to two facts alleged in his Complaint. First, he asserts that Clearfield "did not revise its policies, supervision or training" after the incident at issue. Compl. ¶ 142. Second, he alleges that Clearfield failed to discipline Officer Fratto for use of the leg sweep and instead concluded that the use of force was justified. *Id.*

Both allegations are insufficient to establish that Clearfield failed to train Officer Fratto. Each concerns actions Clearfield took *after* the constitutional violations occurred. As the Tenth Circuit noted "basic principals of linear time prevent us from seeing how conduct that occurred *after* the alleged violation could have somehow caused that violation." *Cordova v. Aragon*, 569 F.3d 1183, 1194 (10th Cir. 2009). Furthermore, Nicholas offers no factual allegations demonstrating that Clearfield's purported failure to train resulted from deliberate indifference by a municipal policymaker. Instead, he merely asserts that such indifference existed. Although "detailed factual allegations" are not required to survive a motion to dismiss, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," to state a claim. *Iqbal*, 556 U.S. at 678 (quoting, *Twombly*, 550 U.S. at 555). The court concludes Nicholas's Complaint fails to state a claim upon which relief can be granted against Clearfield City.

## CONCLUSION

Based on the above reasoning, Defendant Fratto's Motion to Dismiss is DENIED and Defendant Clearfield City's Motion to Dismiss is GRANTED.

DATED this 11th day of March 2026.

BY THE COURT:

_____
DALE A. KIMBALL,
United Sates District Judge